# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **L.N. and J.N.-1**

**No. 18-0033** (Randolph County 2017-JA-55 and 56)

**FILED**

**May 14, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.N.-2, by counsel Steven B. Nanners, appeals the Circuit Court of Randolph County's December 12, 2017, order terminating his parental rights to L.N. and J.N.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Heather M. Weese, filed a response on behalf of the children also in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent and improperly terminating his parental rights based upon the erroneous adjudication.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2017, the DHHR filed a child abuse and neglect petition against petitioner, alleging that petitioner abused the mother and both children mentally, emotionally, and physically, and also abused L.N. sexually. The mother obtained a domestic violence protective order ("DVPO") against petitioner in relation to these acts. The children participated in forensic interviews at the local Children's Advocacy Center and disclosed that their father frequently consumed alcohol and verbally abused them by calling them names such as "fat," "lazy," "slut," and "worthless." The children also disclosed physical abuse by petitioner, including slapping them in the face, pushing them down, and throwing objects at them. Petitioner also abused the children's pets in their presence, including choking and punching the dog and threatened the children that he would beat them similarly if they did not obey. Both children expressed fear that

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, we will refer to them as J.N.-1 and J.N.-2, respectively, throughout this memorandum decision.

their father would kill their mother for obtaining the DVPO against him. Finally, L.N. revealed that petitioner sexually abused her by digitally penetrating her on three separate occasions and penetrating her with his penis on one occasion. Petitioner waived his preliminary hearing.

The circuit court held an adjudicatory hearing in August of 2017. Petitioner was transported to the hearing from the regional jail, where he was incarcerated for charges relating to his sexual abuse of L.N. Petitioner indicated that he was willing to stipulate to certain allegations contained in the petition, but his counsel advised the circuit court that due to pending criminal charges, he would not stipulate to any allegations of sexual abuse. A discussion then ensued on the record, during which the guardian provided her opinion regarding petitioner's partial stipulation. The guardian stated

I understand . . . the facts and circumstances as we find ourselves with regard to [petitioner] to enter an admission to child abuse for which he bases him being criminal [sic] incarcerated and the case law is clear in that regard that he has to choose one or the other. His silence on that can be taken by this [c]ourt, to be contrary to his acceptance to his responsibility in any type of argument involving his parental rights, but he does that at the detriment of being used in his criminal case.

At that time, the circuit court allowed petitioner to provide a stipulation. Petitioner attempted to stipulate to some allegations of abuse, including his becoming intoxicated in the children's presence and "being mean" to them, but denied participating in domestic violence and denied that his drinking affected his ability to parent. The circuit court found that petitioner's stipulation was insufficient and the matter proceeded to a contested adjudicatory hearing. The DHHR presented the testimony of the forensic interviewer who personally interviewed L.N. and observed the interview of J.N.-1. The forensic interviewer testified regarding the children's disclosures of abuse, including petitioner verbally insulting them, physically harming them, abusing their pets, and sexually assaulting L.N. on four separate occasions. After hearing evidence, the circuit court adjudicated petitioner as an abusing parent.

In December of 2017, the circuit court held a dispositional hearing wherein it took judicial notice of the testimony presented and findings made at the adjudicatory hearing. The DHHR proffered that due to the aggravated circumstances of sexual abuse it was not required to make reasonable efforts to preserve the family, and based upon the evidence taken at the adjudicatory hearing, requested that petitioner's parental rights be terminated. Petitioner presented no evidence and argued that his adjudication was improper. Further, petitioner indicated that he was not requesting an improvement period because he did nothing wrong. The guardian joined the DHHR's motion to terminate his parental rights and advised the circuit court that both children desired termination of petitioner's parental rights. The circuit court found that the evidence presented at the adjudicatory hearing created a sufficient basis for both adjudication and disposition, especially in light of petitioner's failure to request an improvement period or accept responsibility for his wrong-doing. The circuit court also acknowledged the children's desire that his parental rights be terminated. Accordingly, the circuit court found that petitioner was unable or unwilling to provide for the children's needs, that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future, and that

termination was necessary for the children's welfare. It is from the December 12, 2017, order terminating his parental rights that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent based upon insufficient evidence. Specifically, petitioner argues that the DHHR failed to offer any evidence to support the allegations contained in the petition except for the testimony of the forensic interviewer, who was erroneously qualified as an expert witness and testified as to hearsay statements made by the children. Petitioner argues that the recorded interviews should have been submitted into evidence rather than the forensic interviewer's testimony. Finally, petitioner argues that he was misinformed by the guardian as to whether his testimony could be used against him in his criminal case. We find petitioner's argument to be without merit.

First, petitioner acknowledges that he failed to object to the forensic interviewer's testimony but claims that the circuit court's reliance upon the same instead of the recorded interview constitutes plain error. We disagree and decline to review the matter under a plain error analysis. Moreover, petitioner argues that the circuit court erroneously qualified the forensic interviewer as an expert witness "without affording him the opportunity to object." This argument is entirely without merit as petitioner fails to explain how the circuit court should have invited him to object or cite to any authority requiring such. Accordingly, we find that petitioner has waived this argument on appeal. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n.20 (1999)." *Noble v. W.Va. Dep't of Motor Vehicles*, 223 W.Va 818, 679 S.E.2d 650 (2009). The record is clear that petitioner objected to

---

[2]The mother was a non-abusing parent throughout the proceedings below and the permanency plan for the children is to remain in her care.

neither the forensic interviewer's testimony, nor her qualifications as an expert witness and, as such, we decline to address these issues.

Second, we find no error in the circuit court's adjudication of petitioner as an abusing parent. We have held that

> "W.Va.Code [§] 49-6-2(c) [now West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997) (citations omitted). Pursuant to West Virginia Code § 49-1-201,

> "'[an a]bused child' means: (1) [a] child whose health or welfare is being harmed or threatened by: (A) [a] parent . . . who knowingly or intentionally inflicts, [or] attempts to inflict . . . physical injury or mental or emotional injury, upon the child or another child in the home . . . [or] (B) [s]exual abuse or sexual exploitation[.]"

The DHHR presented the testimony of the forensic interviewer who interviewed L.N. and observed J.N.-1's interview. This interviewer testified that L.N. disclosed emotional, physical, and sexual abuse perpetrated by petitioner. The interviewer also observed J.N.-1 disclose emotional and physical abuse by petitioner. Both children disclosed that they had been slapped, pushed, and had things thrown at them by petitioner. Both children also disclosed that petitioner abused their pets in front of them and threatened to do the same to them. Importantly, petitioner did not offer testimony or evidence to contradict this testimony. We have held that

> [b]ecause the purpose of an abuse and neglect case proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability.

Syl. Pt. 2, *W.Va. Dep't of Health & Human Res. ex rel. Wright v. Doris S.*, 197 W.Va. 489, 475 S.E.2d 865 (1996). Petitioner did not respond to probative evidence offered against him during the proceedings below and, as such, it was in the circuit court's discretion to consider his silence as affirmative evidence. While petitioner argues that the guardian misinformed him regarding the ramifications of remaining silent, a review of the record does not indicate that petitioner relied upon the guardian's statement to his detriment, especially in light of the fact that petitioner's counsel stated that he was not going to testify to any allegations regarding sexual abuse prior to any statement made by the guardian. Moreover, the guardian's statement that petitioner had to choose between remaining silent or testifying to the detriment of said testimony being used in his

criminal case cannot be construed to overstate the law as petitioner alleges.[3] Based on the evidence outlined above, we find no error in the circuit court's decision to adjudicate petitioner as an abusing parent based upon the testimony of the forensic interviewer regarding the many forms of abuse and petitioner's silence.

Petitioner also argues that the circuit court erred in terminating his parental rights based upon the erroneous adjudication. However, we find no error in the circuit court's adjudication of petitioner, and we find no error in its decision to terminate petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental, custodial, and guardianship rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. According to West Virginia Code § 49-4-604(c)(2) and (5), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> (2) [t]he abusing parent or parents have willfully refused or are presently unwilling to cooperate in the development of a reasonable family case plan designed to lead to the child's return to their care, custody and control . . . [or]
>
> . . . .
>
> (5) . . . have repeatedly or seriously injured the child physically or emotionally, or have sexually abused or sexually exploited the child, and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems or assist the abusing parent or parents in fulfilling their responsibilities to the child[.]

---

[3]We have previously noted that this Court is

> satisfied that this rule allowing a trial court to consider one's silence as affirmative evidence of culpability, as set forth in [*W.Va. Dept. of Health and Human Resources ex rel. Wright v. Doris S.,* 197 W.Va. 489, 475 S.E.2d 865 (1996)], is soundly supported by the authorities and is consistent with the policy of this State which encourages prompt hearing of abuse and neglect cases and a paramount concern for the best interests of the children involved in such proceedings. We are also satisfied that the rule does not offend the protections against self-incrimination afforded by the Fifth and Fourteenth Amendments to the Constitution of the United States and Article III, Section 5 of our State Constitution. As applied to the issue of culpability, the rule simply confronts the accused parent with a choice: Assert the privilege against self-incrimination with the risk that silence will be considered in the civil proceeding as evidence of culpability, or waive the privilege and offer such evidence as the accused may alone possess to refute the charge of abuse and neglect.

*In re Daniel D.*, 211 W.Va. 79, 87, 562 S.E.2d 147, 155 (2002).

Here, the circuit court found that there was sufficient evidence to find that petitioner abused the children physically, mentally, emotionally, and abused L.N. sexually, which constituted aggravated circumstances. Moreover, petitioner did not request an improvement period or desire to participate in the same because he continued to deny the allegations of abuse and neglect throughout the proceedings. As such, petitioner's failure to acknowledge the conditions of abuse rendered the problem untreatable. *See In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013). Finally, the children desired that petitioner's parental rights be terminated. Based upon the evidence outlined above and petitioner's failure to acknowledge the conditions of abuse and refusal to participate in a plan to correct the same, we agree with the circuit court's findings that there was no reasonable likelihood that petitioner could correct the conditions of abuse and that termination was necessary for the children's welfare. As mentioned above, circuit courts are directed to terminate parental rights upon such findings.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 12, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  May 14, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker